IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH HEINZL, individually and on behalf of )
all others similarly situated, )
          Plaintiff, )
)
   vs )   Civil Action No. 14-1010
)
QUALITY FOODS CORPORATION, d/b/a )   Magistrate Judge Mitchell
KUHN'S MARKET, )
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sarah Heinzl, brings this action individually and on behalf of all others similarly situated against Defendant, Quality Foods Corporation, d/b/a Kuhn's Market ("Kuhn's"), alleging violations of Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181 to 12189 (ADA). Specifically, she alleges that the facilities at Kuhn's are not fully accessible to and independently usable by individuals who use wheelchairs for mobility, as she does, because of various barriers in the parking lot and along the route to the building entrance.

Presently before the Court is Defendant's motion to dismiss or stay the Amended Complaint. Defendant challenges Plaintiff's standing to bring this action, contends that she has sued the incorrect party or at least failed to join an indispensable party, requests a stay on the grounds that the case will shortly become moot once the property owner makes expected changes to the parking lot and argues that, because Plaintiff's counsel filed this action without providing prior notice, any request for attorney's fees should be denied. For the reasons that follow, the motion will be denied.

### Facts

Plaintiff states that she is a resident of the Commonwealth of Pennsylvania who has a mobility disability and is limited in the major life activity of walking, causing her to be

dependent upon a wheelchair for mobility. (Am. Compl. ¶¶ 2, 15.)[1] She has visited Defendant's property located at 3125 Banksville Road in Pittsburgh, Pennsylvania (the "Subject Property") many times. During these visits, she has experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and access aisle and along the route to the building entrance. (Am. Compl. ¶¶ 18, 24.)

She also indicates that, on her behalf, investigators examined this location and five other retail Kuhn's locations around the greater Pittsburgh area and found the following violations: 1) the surfaces of one or more access aisles and one or more purportedly accessible parking spaces had slopes exceeding 1:48 (i.e., 2.1%); 2) a portion of the route to the store entrance had a running slope exceeding 1:20 (i.e., 5.0%); 3) one or more purportedly van accessible parking spaces and adjacent access aisles were too narrow; 4) a portion of the route to the store entrance had a cross slope exceeding 1:48 (i.e., 2.1%); 5) one or more purportedly accessible spaces were not marked with required signs; 6) no spaces were designated as "van accessible"; 7) one or more access aisles adjacent to purportedly accessible parking spaces was less than 60 inches wide; 8) a curb ramp located on the route to the building entrance had a running slope exceeding 1:12 (i.e., 8.3%); and 9) signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area. (Am. Compl. ¶ 19.)

Plaintiff indicates that the Subject Property is located 2.76 miles from her residence and is the closest grocery store to her residence; that she has shopped at the Subject Property at least once a week for approximately the past five years and it is virtually the only grocery store at which she shops; and that she intends to return to this location as it is the closest and most convenient to her residence, but that numerous architectural barriers deter her from doing so.

---

[1] ECF No. 7.

(Am. Compl. ¶¶ 23-26.)

Procedural History

Plaintiff filed this action on July 28, 2014. On September 3, 2014, Defendant filed a motion to dismiss or stay (ECF No. 3). On September 25, 2014, Plaintiff filed an Amended Complaint (ECF No. 7).

Federal question jurisdiction is based on the ADA claim, 28 U.S.C. § 1331; 42 U.S.C. § 12188(a). She alleges that the cited violations constitute "a failure to remove architectural barriers" in violation of 42 U.S.C. § 12182(b)(2)(A)(iv) and a failure to alter, design or construct accessible facilities after the effective date of the ADA in violation of § 12183(a)(1) and the appropriate regulations, which will deter her and similarly situated individuals from returning to Defendant's facilities and that, without injunctive relief, she will be unable to fully access Defendant's facilities in violation of her rights under the ADA. (Am. Compl. ¶¶ 27, 35-41.)

She also brings this action on behalf of all others similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. (Am. Compl. ¶¶ 28-33.) See seeks a declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA and its implementing regulations, a permanent injunction directing Defendant to take all steps necessary to remove the architectural barriers and bring its facilities into ADA compliance, an order certifying the class she proposes and naming her as class representative and appointing her counsel as class counsel, payment of costs of suit, payment of reasonable attorney's fees and any other relief the Court deems just, equitable and appropriate. (Am. Compl. at 10.)

On October 9, 2014, Defendant filed a motion to dismiss or stay the Amended Complaint (ECF No. 10), to which Plaintiff responded on October 30, 2014 (ECF No. 13). Defendant filed

a reply brief on November 4, 2014 (ECF No. 14).[2]

Defendant argues that: 1) Plaintiff lacks standing under the intent to return theory because she has alleged proximity only as to one Kuhn's but no reliable history of patronage or frequency and she has alleged only a cursory statement of intent to return; 2) she lacks standing under a deterrent effect theory because the scant facts put into doubt that she would ever go to the several Kuhn's properties or to "all Defendants' facilities" but for the alleged barriers; 3) she has either sued the wrong party or failed to join an indispensable party, because Kuhn's does not own the parking lot with the alleged violations, but is only one of many tenants at this shopping plaza; 4) the property owner has agreed to make changes that its architect has proposed and thus this case should be stayed as the work will render the case moot; and 4) Kuhn's never received notice of any violations prior to Plaintiff bringing suit and although advance notice is not required under the ADA, it would have led to voluntary compliance and thus Plaintiff's counsel should be denied any request for attorney's fees for bringing this unnecessary action.

Plaintiff responds that: 1) she has demonstrated an intent to return to the Subject Property based upon past discriminatory conduct, a reasonable inference that the conditions will continue and a reasonable inference that her stated intent to return to the Subject Property is plausible; 2) she satisfies the deterrent effect test based upon the barriers she has encountered at the Subject Property that impede her safe access thereto; 3) the scope of her claims should be determined by application of Rule 23 and she does not have to visit every Kuhn's location to establish standing; 4) her claims are not "moot" because Defendant represents that it has notified the property owner who intends to make changes at some unknown future date; and 5) under the ADA, both landlord and tenant may be held liable and whether or not the property owners are "necessary" to this case

---

[2] Defendant refers to ECF No. 13 as "the Reply Brief." A non-movant's filing is called a brief in opposition or a response brief; a movant's further brief in support of its motion is called a reply.

is an issue of fact that cannot be determined at this stage of the proceedings.

In a reply brief, Defendant concedes that Plaintiff has standing, but only with respect to the Subject Property and it argues that, as to that Kuhn's location, the property owner is the proper party and a stay will allow the property owner to make changes and render this matter moot without further use of judicial resources. Therefore, it continues to argue that this matter should be dismissed or stayed.

Standing

"A motion to dismiss for want to standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). The Court of Appeals has explained that:

> In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: "Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." Ballentine, 486 F.3d at 810 (citing Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). The Supreme Court most recently explained this standard in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009): "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955)….
>
> "A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). With respect to 12(b)(1) motions in particular, "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007).

In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243-44 (3d Cir. 2012).

The Supreme Court has held that:

> In every federal case, the party bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The standing requirement is born partly of "'an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting Vander Jagt v. O'Neill, 699 F.2d 1166, 1178–1179 (C.A.D.C. 1982) (Bork, J., concurring)).

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). The Court has explained that:

> In Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc., 528 U.S. 167, 180-81 (2000). However, the manner in which standing must be supported depends upon the stage of the litigation at which the issue is raised: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Defenders of Wildlife, 504 U.S. at 561 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).

ADA Title III

Title III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128 (2005). Specifically, it requires "places of public accommodation" to "remove architectural barriers … in existing facilities … where such removal is readily achievable," 42 U.S.C.

§ 12182(b)(2)(A)(iv), and to "design and construct facilities for first occupancy [no] later than 30 months after July 26, 1990 that are readily accessible to and usable by individuals with disabilities," § 12183(a). Places of public accommodation include "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," § 12181(7)(E), and thus include Kuhn's.[3] Failure to meet these requirements constitutes a violation of the ADA which may be enforced by individuals bringing suit for injunctive relief in federal court, § 12188(a).

"Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citation omitted). See 42 U.S.C. § 12188(a) (providing that the remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968) (noting that Title II allows for injunctive relief only).

Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations. Plaintiffs seeking prospective injunctive relief must demonstrate a "real and immediate threat" of injury in order to satisfy the "injury in fact" requirement of standing. Anderson, 943 F. Supp. 2d at 538 (citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

---

[3] Plaintiff cites § 12181(7)(F), but this would appear to be a typographical error because the subsection covers various kinds of service establishments (laundromats, dry cleaners, banks, etc.).

7

Judge Hornak noted that:

> In Title III ADA [c]ases in which disabled plaintiffs bring suit seeking an injunction to cure discriminatory practices, courts generally look to four factors to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and therefore whether the threat of injury is concrete and particularized: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiffs past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." "The four-factor test is one of totality, and a finding in favor of [the plaintiff] does not require alignment of all four factors."

Anderson, 943 F. Supp. 2d at 539 (quoting Harty v. Burlington Coat Factory of Pa., L.L.C., 2011 WL 2415169, at *4, 7 (E.D. Pa. June 16, 2011)). Defendant argues that the four-factor test is "the law" in this District and that Plaintiff fails to meet it. This four-factor test has not been adopted by the Third Circuit, but it has been cited by many district courts.[4] See Garner v. VIST Bank, 2013 WL 6731903, at *5 (E.D. Pa. Dec. 20, 2013) (citing cases). But see Klaus v. Jonestown Bank & Trust Co. of Jonestown, 2013 WL 4079946, at *7 (M.D. Pa. Aug. 13, 2013) (describing four-part test as "rigid" and "unendorsed" by the Third Circuit, but finding that blind plaintiff who challenged ATMs met it anyway).

Plaintiff argues that no court of appeals has adopted the four-factor test. The Court of Appeals for the Eleventh Circuit noted that a district court had applied the four-factor test, but stated that these factors are "not exclusive and that no single factor is dispositive. District courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1327, 1337 n.6 (11th Cir. 2013); see also Daniels v. Arcade, L.P., 477 F. App'x 125, 129 (4th Cir. 2012) (declining to adopt the four-factor test, which the court described as having "overly and unnecessarily complicate[d] the issue at hand."); D'Lil v. Best Western Encina Lodge & Suites,

---

[4] This Court's research has not found any case from the Third Circuit discussing the issue of standing in an ADA Title III action.

538 F.3d 1031, 1037-38 (9th Cir. 2008) (finding intent to return based on regularity of visits and stated intent but not proximity). Some courts have noted that the four-factor test is more appropriate to apply at the summary judgment stage, not on a motion to dismiss. See Brown v. Showboat Atlantic Propco, LLC, 2009 WL 690625, at*2 (D.N.J. Mar. 11, 2009); Wilson v. PFS LLC, 2006 WL 3841517, at *4 (S.D. Cal. Nov. 2, 2006).

Courts that have not adopted the four-factor test have cited the following three considerations regarding an intent to return for purposes of standing: 1) the plaintiff alleges past injury under the ADA (encountering some kind of barrier); 2) it is reasonable to infer from the complaint that the discriminatory treatment will continue; and 3) it is reasonable to infer from the complaint that, based on the plaintiff's past frequency of visits and the proximity of the defendant's place of business to the plaintiff's home, the plaintiff intends to return to this location in the future. Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (legally blind patron who frequently visited restaurants near her home and did not receive "effective communication" of their menu options had standing to pursue claim). See also Chapman v. Pier 1 Imports, 631 F.3d 939, 948 (9th Cir. 2011); Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 62-63 (1st Cir. 2005).

The location at issue need not be near the plaintiff's home if she alleges a reason to return to the location. See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002) (plaintiff who traveled weekly to city 70 miles from where he lived to visit his grandmother and encountered architectural barriers at grocery store had standing to sue); D'Lil, 538 F.3d at 1037 (disabled plaintiff who expressed intent to return to Santa Barbara area—as she frequently did for both business and pleasure—and stay at Best Western Encina if barriers were removed established standing); Houston, 733 F.3d at 1340 (plaintiff who lived in next county but

traveled frequently 30.5 miles to supermarket near his lawyer's office and encountered architectural barriers had standing); Kreisler v. Second Ave. Dining Corp., 731 F.3d 184, 188 (2d Cir. 2013) (standing requirements met when "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [place of public accommodation] to plaintiff's home, that plaintiff intended to return to the subject location."); Camarillo, 518 F.3d at 158 (legally blind patron who alleged that she repeatedly was rebuffed when she asked to have menus read to her had standing to sue based on past experience, reasonable inference that it would continue and reasonable inference that she would return); Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211-12 (10th Cir. 2014) ("CCDC") (plaintiff who submitted affidavit stating that she intended to return to store with barriers at least six times per year had standing to sue).

The Deterrent Effect Test

More recently, a number of courts have rejected the "intent to return" test for standing in ADA Title III cases in favor of a "deterrent effect test." Under this theory, a disabled individual suffers a cognizable injury if he is deterred from visiting a non-compliant public accommodation because he has encountered barriers to his disability there. Chapman, 631 F.3d at 950.

The deterrent effect test relies on the statement in the ADA that: "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subsection does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). See Kreisler, 731 F.3d at 188 (disabled plaintiff in wheelchair saw inaccessible entrance to diner and did not have to attempt to overcome it prior to bringing suit); Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1037-38 (9th Cir. 2008) (plaintiff showed "intent to return" to store 550 miles from home once barriers were removed, thus really a

10

deterrent effect case); Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64-65 & n.7 (1st Cir. 2005) (wheelchair user did not have to engage in the futile and indeed hazardous gesture of attempting to board ferry that had no accessible ramps or bathrooms to establish a cognizable injury); Frame v. City of Arlington, 657 F.3d 215, 235-36 & n.104 (5th Cir. 2011) (en banc) (in a Title II case, wheelchair users did not have to limit their claims to noncompliant sidewalks they had actually tried to use).

It is true that, even under the deterrent effect test, the plaintiff must still assert an intent to return to the particular place or places where the violations are alleged to be occurring and thus a plaintiff does not have standing at all of a defendant's facilities scattered over a vast area that she would not realistically visit. See Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074-75 (7th Cir. 2013) (plaintiff who lived in Illinois but who was injured by spring-closing bathroom door of hotel in Overland Park, Kansas, and who expressed an intent to return for a relative's wedding had standing with respect to that hotel, but not the 56 other Courtyard Marriott hotels that used the same spring-hinged door closers). However, when a plaintiff has presented a class action complaint, the issue of standing is limited to the plaintiff's individual standing, not whether the plaintiff can challenge policies as they relate to a multitude of locations. Rather, that is an issue of class certification. As the Tenth Circuit recently observed:

> Abercrombie insists that our standing analysis does not end at the Park Meadows Mall. It argues that Ms. Farrar lacks standing to bring a claim for nationwide injunctive relief because she does not intend to visit every Hollister store with a porch—over 230 stores nationwide. We have no doubt that if Ms. Farrar were seeking a nationwide injunction in her own right, then she would lack standing to challenge accessibility barriers at stores she never intends to visit. Although the concepts of standing and adequacy of status to maintain a class action appear related, they are independent criteria and must be evaluated separately. See Hassine v. Jeffes, 846 F.2d 169, 175-76 (3d Cir. 1988). The question whether an injunction may properly extend to Hollister stores nationwide is answered by asking whether Ms. Farrar may serve as a representative of a class that seeks such relief. All that is necessary to answer this question is an application of Rule 23.

CCDC, 765 F.3d at 1212-13 (footnote and some citations omitted). See also Garner, 2013 WL 6731903, at *9 (plaintiff satisfied standing requirements with respect to the ATM he used and the challenges to the remaining ATMs represented an issue of class certification, not standing).

The Court concludes that Plaintiff has satisfied the requirements of standing, both under the intent to return test and under the deterrent effect test. She has encountered architectural barriers at the Subject Location, which is the closest to her home and which she has visited once a week for approximately five years, and she has expressed an intent to return even though the barriers remain.

With respect to other locations cited in the Amended Complaint, Plaintiff does not have to visit them to establish standing. Rather, that is an issue of class certification, which is not before the Court at this time. Defendant relies on the Anderson case, but no class action was asserted therein and thus the plaintiff had to show actual injury at each named store.

Appropriate Parties

Defendant argues that, with respect to the Subject Property, it is only one of a number of tenants at a shopping plaza and that the property owner is the proper party because according to its lease, the parking lot and the route to the store are the responsibility of the property owner, not the tenants. (ECF No. 3 Ex. 3; Ex. 4 ¶¶ 1-3.)[5] Indeed, Defendant asserts that it has notified the property owner (Banksville, Inc.) and was informed that the architect who previously prepared the drawings for the common areas at issue in this Complaint had already made new

---

[5] Although Plaintiff argues that Defendant "merely alludes to the deed records and lease agreements but fails to attach them to its motion" (ECF No. 13 at 20 n.10), Defendant did attach the deeds to its motion to dismiss the original Complaint, and then incorporated them by reference into its pending motion to dismiss the Amended Complaint (ECF No. 10 ¶¶ 8, 10.) On the other hand, Defendant has not actually supplied the lease, but has instead proffered a "verification" of the lease's terms by Banksville, Inc. Vice President Jodi Zema.

drawings as to any affected area and a repaving company is being retained to do any necessary repaving.[6]  (ECF No. 3 Ex. 4 ¶¶ 5-6 & Attach.)

Plaintiff responds that the property owner is neither "necessary" nor "indispensable" under Federal Rule of Civil Procedure 19, and thus the case may proceed without that party's presence.  Plaintiff contends that, regardless of what a lease between Defendant and the property owner might say, both the landlord and tenant are liable under the ADA.

The regulations to the ADA provide as follows:

> Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

28 C.F.R. § 36.201(b).  "Thus, contractual allocation of responsibility has no effect on the rights of third parties."  Botosan v. Paul McNally Realty, 216 F.3d 827, 833 (9th Cir. 2000).  In Botosan, the court held that a landlord could not avoid liability for parking lot barriers based upon a lease provision that shifted all responsibility for ADA compliance to a tenant.

Defendant argues that, when a plaintiff sues a tenant for ADA violations regarding a common area over which the tenant never had any control pursuant to a lease, the landlord must bear responsibility.  Kohler v. Bed Bath & Beyond of Cal., LLC, 2012 WL 3018320, at *3 (C.D. Cal. July 23, 2012).  The Court notes that this case merely states this proposition with no legal analysis.

Plaintiff responds that "the extent of control that a party has over property such that it is obligated to make ADA repairs is an issue of fact."  Delgado v. Orchard Supply Hardware Corp.,

---

[6] Defendant also states that, as to the other locations, it is the tenant at two, that the McKnight Road property is owned by Gumberg and the remaining four properties are owned by Franklin Square, L.P.  (ECF No. 3 Ex. 3; ECF No. 4 at 2.)

13

826 F. Supp. 2d 1208, 1216 (E.D. Cal. 2011). In Delgado, the court denied a motion for summary judgment because the evidence was disputed as to how much control a hardware store had to make changes to a parking lot.

In its reply brief, Defendant purports to cite a case for the proposition that a landlord, rather than a tenant, is responsible for ADA compliance in common areas. Independent Living Resources v. Oregon Arena Corp., 982 F. Supp. 698 (D. Or. 1997), opinion supplemented, 1 F. Supp. 2d 1159 (D. Or. 1998). In that case, however, the court concluded its discussion of this issue with the following comments:

> As a practical matter, if a customer brings a Title III action against the landlord for policies that are subject to the tenant's control, then the tenant likely is a necessary party who, on appropriate motion, must also be joined. Otherwise, the court might be unable to grant effective relief. That is particularly true in Title III cases, where the remedy in a private action is limited to prospective injunctive relief. Likewise, the landlord may be a necessary party in any action brought against the tenant for conditions that are the landlord's responsibility.
>
> If the tenant and landlord stipulate as to the allocation of responsibility, the court may then dismiss the claims against the non-responsible party. The tenant and landlord may also implead each other and seek indemnification pursuant to the contractual allocation of responsibility. Consequently, the court does not believe that in most cases this will present a significant issue.
>
> For purposes of the instant case, OAC—as the landlord—is a proper defendant. If OAC contends that some other party is contractually responsible for the challenged conditions, OAC may either proceed with this case in its present form, or it may implead or move to join those other parties.

Id. at 768. First, the court in Independent Living could not make a ruling that the landlord is always responsible for common areas, as such a question would have been beyond the scope of the issues before the court. It could have held—and in fact, did so hold—that the landlord was liable under the specific facts of the case, which may or may not be true in this case. More importantly, the court observed that the remedy for a missing landlord or tenant is for the defendant in the case to implead the missing party, not move for dismissal. See also Hubbard v.

14

Rite Aid Corp., 433 F. Supp. 2d 1150, 1158-59 & n.3 (S.D. Cal. 2006) (Rite Aid did not demonstrate that common area operator was a necessary party because it could still take some action to make store more accessible, even if it could not provide complete relief, but even if common area operator was a necessary party, there was no showing that it could not be joined and thus there was no basis for dismissal under Rule 19(b)).

The Court of Appeals has set the standards for dismissal of an action pursuant to Rule 19:

> Federal Rule of Civil Procedure 19 determines when joinder of a particular party is compulsory. A court must first determine whether a party should be joined if "feasible" under Rule 19(a). If the party should be joined but joinder is not feasible because it would destroy diversity, the court must then determine whether the absent party is "indispensable" under Rule 19(b). If the party is indispensable, the action therefore cannot go forward.

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993) (footnote and citation omitted).

Although the description of the lease appears to place responsibility for common areas with the property owner rather than the tenant, as cited above, the ADA places responsibility on both landlords and tenants for implementing its provisions and leaves these parties to allocate liability among themselves. Defendant has not even argued that the property owner is indispensable—meaning that it cannot be joined in this case—and given that jurisdiction is based on a federal question rather than diversity and both Kuhn's and Banksville, Inc. are private parties, there would be no basis for concluding that it could not be joined. Finally, even accepting the argument that this case requires the presence of Banksville, Inc., the remedy for Kuhn's is to implead that party, not to seek dismissal of this action. Therefore, this argument is rejected.

<u>Mootness</u>

Defendant requests a stay of this action on the ground that it will become moot when the

property owner makes the necessary alterations to the Subject Property. "It is the law of the Third Circuit that when a defendant agrees to provide all the prospective injunctive relief sought by a plaintiff, his claim for that relief may be dismissed as moot." Medical Soc. of N.J. v. Herr, 191 F. Supp. 2d 574, 581 (D.N.J. 2002) (citing Johnson v. Horn, 150 F.3d 276, 287 (3d Cir. 1998)).

Plaintiff responds that Defendant's act of asserting that it has contacted the property owner, who has agreed to make repairs at some future time, does not render this case moot or call for a stay awaiting a change in circumstances that will render the case moot. Plaintiff is correct. Defendant's argument encounters numerous difficulties. First, under no definition of the term "moot" can the Court currently dismiss this action. It is true that when a defendant cures ADA violations, the case becomes moot. See Norkunas v. Tar Heel Capital Wendy's LLC, 2011 WL 2940722, at *3 (W.D.N.C. July 19, 2011); Brother v. CPL Investments, Inc., 317 F. Supp. 2d 1358, 1372-73 (S.D. Fla. 2004); Parr v. L & L Drive-Inn Restaurant, 96 F. Supp. 2d 1065, 1087 (D. Haw. 2000); Baltimore Neighborhoods, Inc. v. LOB, Inc., 92 F. Supp. 2d 456, 461-62 (D. Md. 2000). But the alleged ADA violations have not been cured and there is no basis upon which to conclude that they will be or when this will occur. Moreover, since Defendant insists that it not the proper party to make the alterations, it cannot "agree to provide all the injunctive relief sought by the plaintiff," nor can Kuhn's represent what another party may do.

The ADA contains no provision for staying a case because a party suggests that it—or another party—will soon make alterations to cure violations. Moreover, as Plaintiff observes, the ADA has been in effect for 30 years and places of public accommodation have had that amount of time to bring their facilities into compliance.

Defendant cites a case that discusses the issue of whether to stay an action pending an

appeal is appropriate and the four factors to be applied. Dehainaut v. California Univ. of Pa., 2011 WL 3810132, at *1 (W.D. Pa., Aug. 29, 2011). This case is not on appeal and the factors cited therein are irrelevant. Therefore, the request for a stay will be denied.

Lack of Notice

Finally, Defendant contends that it received no advance notice of this lawsuit and therefore Plaintiff's counsel should not receive attorney's fees for filing it. Plaintiff has not responded to this argument.

Defendant cites a case that raised concerns about plaintiffs filing ADA Title III cases without providing prior notice to the defendant and questioned whether attorney's fees should be awarded in such scenarios. See Rodriguez v. Investco, L.L.C., 305 F. Supp. 2d 1278, 1281-82 & n.14 (M.D. Fla. 2004). However, this discussion is dicta, because the court held that a hotel management company was in the process of renovating the hotel it acquired to be compliant with the ADA and thus Rodriguez could not demonstrate that the defendant failed to remove architectural barriers. Rodriguez was not a prevailing party and his attorney was not eligible for attorney's fees. Moreover, subsequent case law did not follow the Rodriguez court's suggestion.

"The text of the ADA contains no pre-suit notice requirement. If Congress believes it is preferable as a matter of policy to require plaintiffs to give notice to defendants before filing an ADA suit, it is free to amend the Act." Skaff v. Meridien N. America Beverly Hills, LLC, 506 F.3d 832, 844 (9th Cir. 2007). The court observed that bills had been introduced in Congress to require pre-suit notice, but had not been passed. It further observed that, although some district courts had expressed concern that plaintiffs' lawyers were abusing the ADA to obtain "shake down" settlements, but held that there are methods of handling abuse in cases where it occurs and that Congress and state legislatures have means to study this issue and modify the law if

appropriate.  Id. at 845 & n.13.  Subsequently, the Ninth Circuit held that "a district court may not use the lack of prelitigation notice as a factor to determine whether to deny as unjust a request for attorney fees under the ADA."  Jankey v. Poop Deck, 537 F.3d 1122, 1131-32 (9th Cir. 2008).

Other courts have held that lack of notice cannot be used to deny attorney's fees but could be considered as a factor to reduce them if the "factual record supports a finding that the plaintiff filed or maintained a suit unnecessarily."  Association of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1360-61 (11th Cir. 2006).  See also Access for All, Inc. v. Boardwalk Regency Corp., 2012 WL 3627775, at *3-4 (D.N.J. June 28, 2012); Sapp v. Snuffer's Restaurants, Inc., 2010 WL 6194117, at *5 (N.D. Tex. Nov. 23, 2010); Jones v. Eagle-North Hills Shopping Ctr., LP, 478 F. Supp. 2d 1321, 1332 (E.D. Okla. 2007).

Thus, not only is the discussion in Rodriguez about denying attorney's fees for failing to provide prior notice dicta, but subsequent cases have explicitly rejected it.  In any event, this issue is not ripe for decision now and the Court need not discuss it further.

For all the reasons cited above, Defendant's motion to dismiss or stay this action will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH HEINZL, individually and on behalf of )
all others similarly situated, )
       Plaintiff, )
)
  vs )    Civil Action No. 14-1010
)
QUALITY FOODS CORPORATION, d/b/a )    Magistrate Judge Mitchell
KUHN'S MARKET, )
       Defendant. )

## ORDER

AND NOW, this 17th day of November, 2014

IT IS HEREBY ORDERED that the motion to dismiss or stay the Amended Complaint filed by the Defendant (ECF No. 10) is denied.

IT IS FURTHER ORDERED that Defendant file an Answer to the Amended Complaint by December 1, 2014.

                                                      s/Robert C. Mitchell_____
                                                      ROBERT C. MITCHELL
                                                      United States Magistrate Judge